## WALKER PATENT PIVOTED BIN CO. et al. v. BROWN et al.

(Circuit Court, E. D. Pennsylvania. July 20, 1901.)

### No. 17.

PATENTS—INVENTION—TILTING BIN.

    The Walker patent, No. 614,279, for a bin, describes a swell-front, counterbalanced, tilting bin for merchandise, which was not anticipated, being an improvement over those of the prior art both as to the counterbalancing of the bin and the utilizing of space in the supporting frame,

and the combination of such features produced a new type of bin of superior utility, and shows patentable invention. Also *held* infringed.

In Equity. Suit for infringement of patent. On final hearing.

Ernest Howard Hunter, for complainants.

E. H. Fairbanks, for respondents.

ARCHBALD, District Judge.[1] If the plaintiffs' bin is a patentable invention, in view of the prior state of the art, it is conceded that there has been an infringement; and the concession is not a large one, for the bin constructed by the defendants so exactly reproduces its controlling features that one has to look closely to discover any difference between them. It is found in two unimportant particulars,—with regard to the axis of the bin and the display partition; at most mere details of construction, in which, in the matter of simplicity, the defendants may have somewhat improved upon the plaintiffs, without relieving their bin, however, in other respects from its infringing character. The utility of the invention may also be regarded as confessed by the studied imitation of it which we find. The only question, therefore, is whether the patent has been anticipated.

The patentee, in his specification, declares, with regard to his invention, that it "relates to pivoted or tilting bins, having for its object the provision of means to facilitate the operation of such bins, as well as the utilization of a certain portion thereof for the display of merchandise." "Broadly speaking," says he, "my invention comprises a bin mounted in a casing structure so as to be pivoted at the front edge thereof, said bin having a swell front projecting beyond the normal front of said supporting structure. As hereinafter described, said swell front may be provided with a false front beneath a glazed opening in the former, and a space be thus provided for the display of merchandise as aforesaid." Its limits are recognized in the following disclaimer:

"I am aware that it is not broadly new to construct a tilting bin so that a portion of its contents shall be upon each side of a vertical line extending through the axis of its rotation: but, as far as I am aware, such construction is limited to devices of the class shown in United States letters patent No. 209,936, granted to W. H. Stewart on November 12, 1878. Such a construction is obviously not adapted for the embodiment which I have illustrated, for the reason that its axis of rotation occurs some distance within the supporting structure. If its axis is shifted to a position at the front, * * * then such a bin becomes of the type illustrated in United States letters patent No. 222,640, granted to A. K. Potter on December 16, 1879."

But the intended differentiation from the prior art is better illustrated in the declaration made by the patentee at the time of his final application:

"It is submitted," as it is there said, "that applicant's type of bin is essentially different from the bins disclosed by the prior art, which are not of his invention, in that the axis of oscillation of his bin body is located at the extreme front edge of its supporting casing. Such a location * * * permits the use of a bin which is of dimension equal to that of the chamber in which it is mounted. Referring to Moses and Burgett, of record, it will

---

[1] Specially assigned from Middle district of Pennsylvania.

be seen that the location of the axis of oscillation of said bins within the supporting casing or chamber, instead of at the front edge thereof, necessitates the loss of considerable space at the bottom of the bin chamber to permit of the forward movement of the bin body; the amount of space thus wasted being determined by the angular relation of the bin to the casing at the extreme limit of its movement. When said bins are mounted tier upon tier, as is usual in store structures, such a loss is not only disadvantageous from an economical standpoint, but also renders such construction undesirable by reason of the unsightly opening aforesaid beneath the bin for the accumulation of dust and fragments of merchandise. Applicant has limited his claims filed herewith to his peculiar type of bin differentiated from the prior art by the location of its pivotal connection with its supporting structure as aforesaid. This particular feature of location of the axle [axis] of oscillation of the bin was disclosed by applicant in his prior patent (Walker, of record). As shown in Fig. 3 of said patent, however, no provision was made for counterbalancing the bin body. Therefore the depth from front to rear of that form of bin was limited by the necessity for maintaining the center of gravity near the pivotal point; for, if not so located, the bin fell into closed position, when released by the operation, with such a jar as to discharge some of its contents within the bin chamber. To overcome this defect, applicant devised the subject-matter of his present application, wherein all the advantages of the location of the axis of oscillation at the front of the structure are retained, and the bin body is counterbalanced by a swell front. * * * It is submitted that applicant has not sought to cover broadly a counterbalancing bin, for such bins are well known in the art; nor has he sought to claim broadly a display front upon a tiltable bin, although it appears from the record that such construction is novel with him. On the contrary, the claims herewith presented are limited as aforesaid to a particular type of bin, and to a combination of elements present in said particular type which cannot be found in the references of record."

By these somewhat extended extracts it is established that the patentee, at the time of applying for the patent in suit, conceded that there was no novelty in a tilting bin,—such, for instance, as the Stewart (1878), the Potter (1879), the Burgett (1885), the Hardenbergh (1886), and the prior Walker (1895); nor yet in one that was counterbalanced,—such as the Stewart, the Burgett, the Hardenbergh, and the Carr; nor did he put especial stress on the display front, although laying claim to the novelty of it in combination with the other features. The whole invention to which he seems to have addressed his mind consisted in a peculiar type of the bins referred to, wherein, by means of a swell or incline front, and the location of the axis of oscillation at the extreme point of the supporting casing, a much more perfect counterbalancing of the bin was brought about, at the same time that the whole capacity of the bin chamber was utilized. As an incident of the incline front, he also recognized the possibility of an advantageous display of the contents of the bin, where that was desired, by means of a glazed panel, and partition back of it, either or both. Was this new, and did it involve an exercise of the inventive faculties such as the patent laws are designed to protect? After a careful consideration of the several previous patents put in evidence, I am satisfied that it did. What the patentee produced—to express it in a phrase—was a swell-front, counterbalanced, tilting bin. In form it certainly differs from anything that had preceded it, and it is in its form, and what is accomplished thereby, that its virtue as well as its novelty consists. Progressively con-

sidered; a tilting bin was an improvement on one that was stationary; and one that was counterbalanced was an improvement again on one that was not. Thereafter the development of the art would lie along the line of perfecting the counterbalancing as well as introducing and adding other advantageous features. Not only to prevent a shifting of the contents, but to make the bin easier to handle, the better the counterbalance, the better the bin; in fact, in this constitutes its real utility. The Stewart (1878) was an improvement in that direction, as well as the Burgett (1885), and the Hardenbergh (1886), which copied it; but what these inventions gained in counterbalancing they lost in another respect. In each there had to be a space left under the bin in which it could tilt forward, and, considering the uses to which such structures are put, the loss of space which this involved was considerable of a detriment. Now, it is just here that the plaintiffs' patent doubly comes in. By throwing the face of the bin forward in a front which swells out from the supporting casing, opportunity is given to locate the axis of oscillation back of a material portion of the contents of the bin, thereby preserving and improving upon the counterbalancing of previous structures, at the same time that the space at disposal is carefully economized by the bin being made to occupy to its full the inclosing bin chamber. It seems to me that this is improvement as well as invention, and is not anticipated by anything in the prior state of the art. The patentee has, as he claims in his application, produced a new type and style of tilting bin, in which he is entitled to be protected. So the patent office thought in granting him a patent, and that action should be allowed a certain weight. It is true, the patent seems to have been granted solely upon the strength of the inventor having utilized the entire space of the inclosing chamber; but this does not prevent us from giving due force to the improvement attained in counterbalancing as well. Nor, on the other hand, can this be characterized as a mere matter of dimension, not patentable. It was the remedying of a defect in this respect found in previous attempts, which involved real invention.

But it is urged that all the essential features of the complainant's patent are present in the Carr (1892), and it is confidently asserted that the latter must have escaped the attention of the patent examiner, or the patent would not have gone out. To this I cannot agree. It is true that, as part of the kitchen cabinet devised by Carr, we find a lower compartment, provided with a tilting, counterbalanced bin, which has an inclined or sloping front; but the similarity so suggested is one of terms merely, rather than of fact or effect. Properly analyzed, the Walker has no more the features of the Carr than it has of other tilting and counterbalanced bins to which reference has been made. The face of the Carr bin inclines forward from the axis, and not back, which makes a material difference in its character and results. In no sense has it the swell front such as is found in the Walker, nor is the counterbalancing effected in the same way. In the Carr the main bottom of the bin is inclined upward at the back, so as, in opening the bin, to throw the contents in the opposite direction; but this is counteracted again by the false bottom in front,

which works the other way, making the counterbalance very imper-- fect, and ineffective. Just the opposite of this is true in the Walker. As soon as the bin is tilted forward, the contents at once incline in that direction, sliding into the angle of the swell front, and tending to divide themselves evenly on each side of the axis of oscillation. Such an improvement in counterbalancing would itself, as it seems to me, be patentable, without more. But a still greater contrast is found when we come to the matter of economy of space. In the Carr, the same as in other preceding structures, there is a decided loss of it. By the false bottom in front and the sloping bottom back of it fully as much is thereby sacrificed as in the Stewart, the Harden- bergh, or the Burgett; while in that before us the whole bin space, as we have seen, is substantially utilized. So that we find with re- gard to the present invention, in contrast with the Carr, the same ad- vance in the art as we did as to the others enumerated; and, if they presented no obstacle to its being patented, neither does it.

So far we have considered the patent in suit without regard to display; but the peculiar advantages afforded by a swell front, where, display is desired, did not escape the inventor, and are not to be lost sight of by us. The general features of the invention are covered by the first claim of the patent, which is intended to apply to every case where a bin is employed of the character described, whether there is an attempted display of its contents or not. The second, third, and fourth claims cover the superadded matter of display. Of these the second provides for a simple panel of glass in the face of the bin; the fourth has the glass with a partition back of it, to hold up to it a portion of the merchandise displayed; while the third has a partition without a glass, the utility of which I fail to appreciate. How far, then, do these specifications add to the character of the invention? No doubt the use of a glazed front to display the contents of a box or bin is not new; nor does it acquire novelty by being inclined back- wards; nor yet, by having a partition back of the glass, to hold in place the goods displayed. All of these features are found in the Rosenberg patent (1895), if, indeed, they were not long since in common use. But what is claimed for them here is that they are new in combination with the other predominating features of the complainant's bin. A bin where the contents can be known at a glance would seem to be an advance on one where they cannot; and one whose front inclines upward to meet the eye would seem, there- fore, to be a material improvement on one where the front, being perpendicular, requires a bend of the head, and a corresponding addi- tional effort, to know what is in it. The advantage may be slight, but it is such that no one would hesitate to choose between the two. Now, it is the combined effect, successfully accomplished in this direc- tion in the complainant's patent by the swell front operating in con- junction with the glazed panel inserted in it, and the partition back of that, all working effectively to the same end, that constitutes, as it is claimed, the novelty of this part of the patent. But, while this has the appearance of merit, and the result attained may seem to involve invention, I must confess that I am not so clear on this branch of the case as I am on the rest of it. While it is true that there is, to a

certain extent, a combined effect brought about by the special features alluded to, by which a more desirable style of bin is produced than if the display was not provided for, yet the means employed are so common, and, when closely analyzed, stand so much in the light of a superadded incident,—an aggregation, rather than a combination,—that I am inclined to regard them as contributing nothing to the novelty or patentability of the whole. This conclusion, however, does not affect the general result. The peculiar type of bin which the inventor devised is patentable without this, and it is therefore patentable with. The invention stands where, I think, the inventor intended and understood that it would stand,—on the general features of his bin,—and there I will let it rest. Let a decree be drawn sustaining the bill and ordering an account as prayed for, with costs.